IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned On Briefs October 25, 2004

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. C.M.

**Appeal from the Juvenile Court for Hamblen County**
**No. 12700, 12702, 12703, 12704, 12705, 12706     Mindy Norton Seals, Judge**

———————————

### No. E2004-00960-COA-R3-PT - FILED DECEMBER 13, 2004

———————————

This is an appeal of the trial court's order terminating the mother's parental rights to her six children. The mother, who had appeared at earlier hearings, did not appear at the termination hearing. A motion for default judgment was neither filed nor served on the mother. The trial court granted a default judgment based upon the mother's failure to appear at the termination hearing. We find that the mother's failure to appear did not constitute grounds for a default judgment in this case. We find that the State did not comply with Rule 55 of the Tennessee Rules of Civil Procedure. The judgment of the trial court is vacated and the cause is remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Edward L. Kershaw, Greeneville, Tennessee, for the Appellant, C.M.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee

### MEMORANDUM OPINION[1]

---

[1]Tenn. Ct. App. R. 10 provides as follows:

> **Memorandum Opinion -** This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On May 27, 2003, Appellee, the State of Tennessee, Department of Children's Services ("DCS") filed a petition to terminate the parental rights of the Appellant, C.M. with respect to her six biological children - L.W. (d.o.b. 7/14/91), M.W. (d.o.b. 3/18/94), G.W. (d.o.b. 4/7/95), F.M. (d.o.b. 10/18/97), P.W. (d.o.b. 10/26/98), and D.W. (d.o.b. 4/26/00).[2] The record indicates that C.M. possesses an intelligence quotient of 55 and has been diagnosed as mildly mentally retarded. The record further indicates that the children were removed from C.M.'s custody by DCS in May of 2001 and that the trial court subsequently found them to be dependent and neglected. The children have remained in foster care since the time of their initial removal from the custody of their mother.

The petition to terminate C.M.'s parental rights came on for final hearing on January 21, 2004. The record shows that C.M. was not present at this hearing and the following exchange took place between the court and counsel for DCS with respect to the latter's request that the court enter a default judgment against C.M.:

> THE COURT: And could you give a brief recitation of what has occurred with reference to trying to get the mother here for this hearing?
>
> MS. PARSONS: Yes, Your Honor. We were here for a termination that was set for - - I don't remember when it was set - - and the mother did not appear, and Mr. Kershaw was representing the mother at that time and there was some concern because [C.M.] has always come to all of the court hearings. The department last heard from her in October, and we've not heard from her since that time.
>
> Subsequent to that court hearing, Your honor, we did publish four consecutive times in the paper in Knox County - - in the News Sentinel which is in Knox County which was [C.M.'s] last residence, and in the ad it informed her that this court date was set today, that if she did not appear today, that a default would be taken against her and a hearing on the termination of her parental rights would occur without further notice to her.
>
> And so we find ourselves here today without [C.M.] here, and we've had no contact whatsoever with her since that time.
>
> THE COURT: Does the State have a motion?
>
> MS. PARSONS: Yes, Your Honor. We would move at this point that [C.M.] had been previously served with a copy of the petition to terminate her parental rights and informed that the last court date which she did not appear, we have taken efforts to inform her of this court date, and we would ask at this time

---

[2]A petition to terminate the parental rights of the children's biological father, G.W., was also filed on the same date. G.W.'s parental rights were terminated by judgment entered January 21, 2004 and no appeal was taken.

that she be held - - found to be in - - held to be in default and that we be allowed to continue ex parte.

...

... To back up a little on her, she had not even - - we had - - this had been set previously and she - - in fact, it had been continued because she had a medical emergency. She had a gallbladder that was removed, and she didn't appear at that time either but there was obviously a reason for that.

THE COURT: So we have the first time it was continued because it was reasonably medically necessary for her, of course, to recuperate from gallbladder surgery. The reset date, which was far enough off to get her to recuperate, she did not appear; but rather than to take a default at that time out of an abundance of caution, it was reset for today.

MS. PARSONS: And then publication took place in the Knoxville News Sentinel.

THE COURT: Then the State's motion for default judgment is granted.

The trial court entered the default judgment against C.M. on March 17, 2004. The judgment states as follows:

In this cause, on motion of the Petitioner and it appearing to the Court that personal service was duly made upon Respondent [C.M.]; that service by publication of the default was duly made upon the Respondent, and that Respondent has failed to appear and make defense to the petition in this cause within the time required by law, **IT IS ORDERED** that this cause be taken as confessed by said Respondent and further hearing set <u>ex parte</u>.

The issue we address in this opinion is whether the trial court followed requisite procedure in entering its default judgment. This is a question of law and, therefore, our review is *de novo* with no presumption of correctness regarding the conclusion of the trial court. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

Tenn. R. Civ. P. 55.01 governs the entry of default judgments and provides in pertinent part as follows:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. All parties against whom a default judgment is sought shall be served with a written notice of the application for judgment at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action.

As best we can determine from our review of the above cited portions of the trial transcript and the trial court's judgment, DCS requested that a default judgment be entered in this case, and the court decreed that a default judgment was proper, because of C.M.'s nonappearance at trial. However, as the above rule specifies, default judgment is appropriate when a party "fails to plead or otherwise defend." The trial court's judgment is not based upon a finding that C.M. "failed to plead or otherwise defend."

We further note that the rule requires that the party entitled to a judgment by default shall apply to the court and that written notice of the application is to be served upon the party against whom the default judgment is sought. See also, *Johnson v. Richardson,* No. M2002-02968-WC-R3-CV, 2004 WL 402670 (Tenn. Workers Comp. Panel March 25, 2003). Our review of the record does not indicate that DCS submitted an application for default judgment to the trial court at any time prior to its oral motion at the final hearing on January 21, 2004, and there is no indication that C.M. was served with such an application.

It also appears that DCS's attempt to serve C.M. by publication does not meet the requirements of relevant statutory authority. The Tennessee Rules of Juvenile Procedure are applicable to a termination proceeding such as the one before us. Tenn. R. Juv. P. 10(c)(2) provides that "[i]f after reasonable effort the party cannot be found or the party's post office address ascertained, whether the party is within or without this state, the court may order service of the summons upon the party by publication in accordance with Tenn. Code Ann. §§ 21-1-203 and 21-1-204(a) and (b)." Tenn. Code Ann. §21-1-203 further sets forth those cases in which personal service may be dispensed with and states that to dispense with personal service in such a case "the facts shall be stated under oath in the bill, or by separate affidavit, or appear by the return." Tenn. Code Ann. § 21-1-204(a) additionally mandates that "[i]n case personal service is not used, if the defendant does not cause an appearance to be entered, the clerk, as soon as the necessary affidavit is made, shall enter upon the rule docket an order requiring the defendant to appear at a certain day therein named, being a rule day, and defend, or otherwise the bill will be taken for confessed." The record in this case does not show that DCS submitted the requisite statement of those facts which would allow dispensing with personal service in compliance with Tenn. Code Ann.§21-1-203 or that an order was entered by the trial court as required by Tenn. Code Ann. § 21-1- 204(a). In any event, these statutes pertain to the initial service of a summons, not subsequent notice of an unfiled motion for default judgment.

Based upon our analysis as set forth above, it is our conclusion that the trial court erred in entering the default judgment in this case. Although C.M. does not raise the issue of the procedural propriety of the trial court's entry of the default judgment, we conclude that this is an appropriate matter for our review pursuant to Tenn. R. App. P. 13(b) which allows us to consider issues not

raised by the parties in order to "prevent injury to the interests of the public" and "to prevent prejudice to the judicial process."

For the foregoing reasons, we vacate the judgment of the trial court and remand for further action consistent with this opinion. Costs of appeal are adjudged against the State of Tennessee, Department of Children's Services.

_____
SHARON G. LEE,  JUDGE